## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KATI M.,[1] | : | Case No. 2:23-cv-04128 |
| Plaintiff, | : | |
| | : | District Judge James L. Graham |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed an application for Supplemental Security Income (SSI) on May 26, 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

undersigned Magistrate Judge **RECOMMENDS** that the Court **REVERSE** the Commissioner's decision and **REMAND** for further proceedings.

## I.     BACKGROUND

Plaintiff asserts she has been under a disability since September 1, 2016.[3] She was thirty-three years old on the SSI application date. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." 20 C.F.R. § 416.964(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 59-83), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on May 26, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [the plaintiff] filed his protective application.").

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920.  The ALJ made the following findings of fact:

| Step 1: | Plaintiff has not engaged in substantial gainful activity since May 26, 2021, the SSI application date. |
|---|---|
| Step 2: | She has the severe impairments of lumbar spine disease, fibromyalgia, left knee chondromalacia, bipolar disorder, obsessive compulsive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD). |

4

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 416.967(b), subject to the following limitations: "[S]he can lift twenty pounds occasionally and ten pounds frequently. She can stand and walk for six hours in an eight-hour day. She can sit for six hours in an eight-hour day. She can never climb ladders, ropes, and scaffolds. She can occasionally perform other postural activities (occasionally climb ramps and stairs, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl). She can never be exposed to heights, moving machinery, and hazards. She can occasionally be exposed to hot and cold temperature extremes and vibrations. The claimant is afflicted with chronic pain noticeable to herself at all times but can maintain attention and concentration in two-hour increments with normal morning, lunch, and afternoon breaks. She can perform routine jobs with no major changes [and] no fast-paced work or strict production quotas. She can occasionally interact with coworkers, supervisors, and the public."

She is unable to perform any of her past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 64-76.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 76-77.)

**B.    State Agency Psychological Consultant Paul Tangeman, Ph.D.**

State agency psychological consultant Paul Tangeman, Ph.D. completed a Disability Determination Explanation form at the reconsideration level in April 2022.

(AR, Doc. No. 7-3 at PageID 149-53.) Dr. Tangeman found moderate impairment in the following "B Criteria" areas of functioning: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at PageID 149.) He found no impairment in the area of understanding, remembering, or applying information. (*Id.*)

In the mental RFC section of the form, Dr. Tangeman indicated that Plaintiff had no limitations in understanding and memory. (AR, Doc. No. 7-3 at PageID 152.) He noted that Plaintiff was moderately limited in the abilities of maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.*)  Dr. Tangeman opined that Plaintiff's work should be "routine with infrequent changes explained in advance" and that Plaintiff could "perform tasks in a job with no strict production quotas or fast paces." (*Id.*)

In the area of social interaction, Dr. Tangeman found moderate impairment in the abilities of interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR, Doc. No. 7-3 at PageID 153.) He opined that Plaintiff could "interact superficially with supervisors, coworkers, and the general public." (*Id.*) In the final area of adaptation, Dr. Tangeman

6

found moderate limitation in Plaintiff's ability to respond appropriately to changes in the work setting. (*Id.*) He opined:

> [Plaintiff] can work within a set routine where major changes are explained in advance and gradually implemented to allow [Plaintiff] time to adjust to the new expectations. [Plaintiff's] ability to handle routine stress and pressure in the work place would be reduced but adequate to handle tasks without strict time limitations or production standards.

(*Id.*)

The ALJ concluded that Dr. Tangeman's assessment was "somewhat persuasive." (Decision, Doc. No. 7-2 at PageID 73.) The ALJ agreed that the record was "consistent with the moderate limitations as identified by Dr. Tangeman." (*Id.*) However the ALJ disagreed with Dr. Tangeman's opinion that Plaintiff had no limitation in the "B criteria" area of understanding, remembering, and applying information. Instead, the ALJ found that Plaintiff's "pain and concentration issues also warrant a mild[-]level limitation" in that area. (*Id.*) The ALJ found that Dr. Tangeman supported his opinion "with a summary of the records." (*Id.*) The ALJ pointed out that Dr. Tangeman reviewed the record at the reconsideration level and so was able to review more records than the consultant who reviewed the record at the initial level. (*Id.*)

### C. Scotti Mesarchik, L.S.W.

Scotti Mesarchik, L.S.W. completed an Ability To Do Work-Related Activities (Mental) form in June 2022. (AR, Doc. No. 7-12 at PageID 2386-87.) Mr. Mesarchik checked boxes to indicate that Plaintiff was "unable to meet competitive standards" (defined on the form as "noticeable difficulty (e.g., distracted from job activity) from [twenty-one] to [forty] percent of the workday or work week") in the following "mental

7

abilities and aptitudes needed to do unskilled work": maintaining attention for two-hour periods; maintaining regular attendance; being punctual within customary and usually-strict tolerances; performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in a routine work setting. (*Id.* at PageID 2386.) Mr. Mesarchik checked boxes to indicate that Plaintiff was "[s]eriously limited" (defined on the form as "noticeable difficulty (e.g., distracted from job activity) from [eleven] to [twenty] percent of the workday or work week") in the areas of sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically-based symptoms, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. (*Id.*) Mr. Mesarchik indicated that Plaintiff had "[l]imited but satisfactory" abilities (defined on the form as "noticeable difficulty (e.g., distracted from job activity) no more than [ten] percent of the workday or workweek") in the areas of remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, and making simple, work-related decisions. (*Id.*)

When asked to explain the limitations that he assessed regarding Plaintiff's difficulty with completing unskilled work, Mr. Mesarchik wrote:

> [Plaintiff] has a bipolar diagnosis, also fibromyalgia. Her moods are labile [and] her wake/sleep pattern gets disturbed. Pain increases her irritability and ability to maintain relationships. She lacks coping skills to deal with change [and] deal with stress. She also has a [diagnosis] of generalized anxiety disorder. Her anxiety causes a lack of focus, excessive worrying,

8

trouble making decisions, and her memory is poor. She would require more than normal rest periods due to her physical pain [and] fatigue.

(*Id.*)

Regarding the "mental abilities and aptitudes necessary for semi[-]skilled and skilled work," Mr. Mesarchik checked boxes to indicate that Plaintiff was "unable to meet competitive standards" in the abilities of understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with the stress of semi-skilled and skilled work. (AR, Doc. No. 7-12 at PageID 2387.) Mr. Mesarchik explained: "All of [her] mental health conditions and her fibromyalgia impact her memory, her ability to make decisions, and to cope with stress [sic]." (*Id.*)

As for the "mental abilities and aptitude[s] needed to do particular types of jobs," Mr. Mesarchik indicated that Plaintiff was "unable to meet competitive standards" in the areas of traveling in unfamiliar places and using public transportation. (AR, Doc. No. 7-12 at PageID 2387.) He indicated that Plaintiff had "limited but satisfactory" abilities in the areas of interacting appropriately with the general public and maintaining socially appropriate behavior. (*Id.*) By way of explanation, Mr. Mesarchik wrote: "[Plaintiff] is irritable [and] maintains high expectations for others. She is easily angered and is impulsive verbally and physically. [Plaintiff] is working on reducing her anxiety (panic symptoms[)] related to driving. [She d]rives only when she absolutely has to." (*Id.*)

Finally, Mr. Mesarchik indicated that Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. (*Id.*) When asked

whether Plaintiff could manage benefits in her own best interest, Mr. Mesarchik wrote:

"Not sure, [she] can be impulsive." (*Id.*)

The ALJ concluded that Mr. Mesarchik's opinion was "not persuasive." (Decision,

Doc. No. 7-2 at PageID 74.) The ALJ explained that he discounted Mr. Mesarchik's

opinion because the terms and definitions used on the questionnaire that Mr. Mesarchik

completed do not comport with definitions used by the Social Security Administration:

> [T]he undersigned notes the definitions for time[-]related limitations used
> by the Social Security Administration mirror the Selected Characteristics
> of Occupations ("SCO") terms of occasionally (meaning up to one-third of the
> time), frequently (from one-third to two-thirds of the time), and constantly
> (two-thirds or more of the time). Comparing this with the definitions used
> within the form, it appears unlimited or very good, limited but satisfactory
> (difficulty no more than [ten] percent), and seriously limited (difficulty
> [eleven] to [twenty] percent) all pertain to the area of "constantly" as these
> allow an activity to be performed more than [sixty-six percent] of the day.
> The next category, "unable to meet competitive standards," spans from
> [twenty-one] to [forty percent], which includes portions of both
> occasionally and frequently.

(*Id.*) According to the ALJ, the form is "inherent[ly] vagu[e] and [difficult to determine]

how the opined limitations translate." (*Id.* at PageID 74-75.)

The ALJ further reasoned that Mr. Mesarchik's opinions "appear internally

inconsistent." (Decision, Doc. No. 7-2 at PageID 75.) By way of example, the ALJ noted

that Mr. Mesarchik opined that Plaintiff had "limited but satisfactory" abilities in the

areas (related to performing unskilled work) of remembering work-like procedures,

understanding and remembering very short and simple instructions, and carrying out very

short and simple instructions. (*Id.*) The ALJ compared this opinion to Mr. Mesarchik's

opinion that Plaintiff was "unable to meet competitive standards" in the areas of

understanding, remembering, and carrying out *detailed* instructions. (*Id.*) The ALJ concluded that Mr. Mesarchik did not provide adequate justification for "such a significant difference" between his opinion about Plaintiff's abilities to perform short and simple instructions and his opinion about her ability to perform detailed instructions. (*Id.*) Turning back to the format of the questionnaire, the ALJ stated that the form contained "no distinction . . . to allow for a difference in performance between semi-skilled work and skilled work capabilities."

The ALJ then explained that Mr. Mesarchik provided no explanation for his opinion that Plaintiff would be absent from work more than four days each month. (Decision, Doc. No. 7-2 at PageID 75.) The ALJ also noted that the treatment records did not show that Plaintiff regularly missed scheduled appointments or "otherwise demonstrate what would cause such absenteeism." (*Id.*) Finally, the ALJ stated that the mental health treatment records "overwhelmingly contain[ed] normal findings" and concluded that Mr. Mesarchik's "descriptions of [Plaintiff's] ongoing symptoms [did] not match the objective psychiatric examination findings." (*Id.*)

### C.    Joshua Ndematebem, C.N.P.

Joshua Ndematebem, C.N.P. completed an Ability To Do Work-Related Activities (Mental) form in November 2022. (AR, Doc. No. 7-13 at PageID 2516-17.) Nurse Ndematebem checked boxes to indicate that Plaintiff was "[s]eriously limited" (defined on the form as "noticeable difficulty (e.g., distracted from job activity) from [eleven] to [twenty] percent of the workday or work week) in the following "abilities and aptitudes needed to do unskilled work": working in coordination with or proximity to others

without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically-based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. (*Id.* at PageID 2516.) Nurse Ndematebem checked boxes to indicate that Plaintiff had "[l]imited but unsatisfactory" abilities in the areas of remembering work-like procedures, maintaining attention for two-hour segments, maintaining regular attendance, being punctual within customary and usually strict tolerances, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions, requesting assistance, responding appropriately to changes in a routine work setting, being aware of normal hazards, and taking appropriate precautions. (*Id.*)

Regarding the mental abilities and aptitudes necessary for semi-skilled and skilled work, Nurse Ndematebem indicated that Plaintiff was seriously limited in the ability to deal with the stress of semi-skilled or skilled work. (AR, Doc. No. 7-13 at PageID 2517.) He indicated that Plaintiff had limited but unsatisfactory abilities in the areas of understanding and remembering detailed instructions, carrying out detailed instructions, and setting realistic goals or making plans independently of others. (*Id.*) In the final area of "mental abilities and aptitudes needed to do particular types of jobs," Nurse Ndematebem indicated that Plaintiff had limited but satisfactory abilities in the areas of interacting appropriately with the general public, maintaining socially appropriate

12

behavior, adhering to basic standards of neatness and cleanliness, traveling in unfamiliar places, and using public transportation." (*Id.*) Nurse Ndematebem explained: "[Plaintiff] has social [and] interpersonal improvement in adjusting to minor routine changes. She has difficulties coping with stressful situations." (*Id.*) Nurse Ndematebem also indicated that Plaintiff would miss approximately three days of work per month due to her impairments or treatment. (*Id.*)

The ALJ concluded that Mr. Ndematebem's opinions were "not persuasive." (Decision, Doc. No. 7-2 at PageID 75.) The ALJ noted that Mr. Ndematebem completed the same questionnaire that Mr. Mesarchik completed and found similar issues with the definitions and terms on the form. (*Id.*) The ALJ also noted that Mr. Ndematebem essentially opined that Plaintiff was capable of performing all mental functional abilities "constantly as that is defined as [sixty-six percent] or more of the day." (*Id.*) But he reasoned that "[Plaintiff's] performance during the consultative examination supports greater limitations than opined by Mr. Ndematebem generally." (*Id.*)

The ALJ further explained that Mr. Ndematebem provided no justification for his opinion that Plaintiff would be absent from work for approximately three days each month. (Decision, Doc. No. 7-2 at PageID 75.) According to the ALJ, Mr. Ndematebem's opinion in this regard was inconsistent with his other opinions that Plaintiff was able to constantly perform the mental abilities that were listed on the form. (*Id.*) The ALJ acknowledged that the "benign findings [documented] during psychiatric examinations" supported Mr. Ndematebem's opinions that Plaintiff could constantly perform the activities listed on the form. (*Id.*) However the ALJ reasoned that Plaintiff's performance

13

during the consultative psychological examinations "warrant[ed] greater functional limitations" in the RFC. (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred by failing to properly evaluate the medical opinion evidence of record. (SE, Doc. No. 9 at PageID 2542.) Specifically, Plaintiff contends that the ALJ erred in his analysis of the opinions of the above-described state agency psychological consultant, social worker, and certified nurse practitioner. (*Id.* at PageID 2542-51.) For the reasons discussed below, the undersigned concludes that Plaintiff's contentions are well-taken and therefore recommends that the ALJ's decision be reversed.

### A. Applicable Law.

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 416.920c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 416.920b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.

14

§ 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024

16

U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 416.920c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.    The ALJ Reversibly Erred When Evaluating The Findings Of State Agency Psychological Consultant Dr. Tangeman.**

The undersigned concludes that the ALJ erred in his analysis of Dr. Tangeman's opinions and that these errors cannot be excused as harmless. Therefore, the Court should reverse and remand the ALJ's decision.

Although the ALJ concluded that Dr. Tangeman's findings were "somewhat persuasive" (Decision, Doc. No. 7-2 at PageID 73), he only addressed Dr. Tangeman's opinions regarding the "B criteria" findings. The ALJ did not explain his evaluation of the persuasiveness of the work-related limitations in the mental RFC section of the Disability Determination Explanation form. (*Compare* Decision, Doc. No. 7-2 at PageID 73, *with* AR, Doc. No. 7-3 at PageID 149-53.) Specifically, the ALJ did not address Dr. Tangeman's opinion that Plaintiff's work should be "routine with infrequent changes explained in advance" and should not have "strict production quotas or fast paces." (AR, Doc. No. 7-3 at PageID 152.) The ALJ also did not consider Dr. Tangeman's opinions that Plaintiff should be limited to superficial interactions, work only "within a set routine

where major changes are explained in advance and gradually implemented," and have no "strict time limitations or production standards." (*Id.* at PageID 153.) Because the ALJ was required to address all of Dr. Tangeman's opinions, he reversibly erred by failing to do so. *See* 20 C.F.R. § 416.920c(b) ("We will articulate . . . how persuasive we find ***all*** of the medical opinions . . . in [the] case record" (emphasis added)).

Defendant asks the Court to ignore the law's mandatory articulation requirement by arguing that "[i]t's clear that the limitations not adopted were not found persuasive by the ALJ." (Mem. In Opp., Doc. No. 11 at PageID 2565.) But the regulation does not allow the Court to make such an inference. Instead, the ALJ is required to state whether he found a medical opinion to be persuasive and explain his reasoning. *Sonnie W. v. Comm'r of the Soc. Sec. Admin.*, No. 2:22-cv-4172, 2024 U.S. Dist. LEXIS 46120, *29 (S.D. Ohio Mar. 15, 2024) (Gentry, M.J.) ("[T]he mandatory articulation requirement . . . imposes a burden of explanation that serves an 'independent and important function' by enabling judicial review and allowing claimants to understand the reasons for the decision."). The Court is neither able nor authorized to fill the ALJ's silence.

Next, the Court must decide whether the ALJ's violation of the mandatory articulation requirement constitutes harmless error. The undersigned has previously held that the harmless error test set forth in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) applies to this determination. *E.g., Sonnie W.*, 2024 U.S. Dist. LEXIS 46120, *26-30. Under *Wilson*, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the

ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546. *Cf. Andrew M. v. Comm'r of Soc. Sec.*, No. 1:20-cv-906, 2022 U.S. Dist. LEXIS 40323, *17-18 (S.D. Ohio Mar. 8, 2022) (Bowman, M.J.) (failure to comply with the mandatory articulation was not harmless where evidence in the record could have supported the rejected medical opinions); *Miles v. Comm'r of Soc. Sec.*, No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, *12 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) (violation of the mandatory articulation requirement required reversal and "the Commissioner's *post hoc* rationalization of how [the] ALJ could have applied the factors . . . does not cure this deficiency.").

Applying the *Wilson* test here, Defendant must show that the ALJ either adopted Dr. Tangeman's opinion or made findings consistent with his opinion. The undersigned finds that Defendant has not made, and cannot make, such a showing. Accordingly, the undersigned concludes that the ALJ's error in failing to evaluate all of Dr. Tangeman's opinions cannot be excused as harmless.

### C.   The ALJ Reversibly Erred In His Analysis Of Mr. Mesarchik's Opinions.

Plaintiff asserts that the ALJ failed to address the supportability factor of Mr. Mesarchik's opinions. (SE, Doc. No. 9 at PageID 2547-48.) The undersigned disagrees.

The ALJ explained that he was not persuaded by Mr. Mesarchik's opinion that Plaintiff would be absent more than for days per month because it was given "without explanation." (Decision, Doc. No. 7-2 at PageID 75.) The ALJ further explained that Mr. Mesarchik's opinions were "internally inconsistent" and did not "adequately explai[n] the justification for such a significant difference between [his opinion regarding Plaintiff's abilities to perform] short and simple versus detailed instructions." (*Id*.) The ALJ's explanations are adequate to satisfy the supportability factor. 20 C.F.R. § 416.920c(c)(1).

Nevertheless, the undersigned finds that the ALJ's explanations are not supported by substantial evidence. As an initial matter, the ALJ's reasoning that Mr. Mesarchik's opinions are "internally inconsistent" is unsupported. (*See* Decision, Doc. No. 7-2 at PageID 75.) Mr. Mesarchik opined that Plaintiff had "limited but satisfactory" abilities in understanding, remembering, and carrying out "very short and simple instructions," but was "unable to meet competitive standards" in understanding, remembering, and carrying out "detailed instructions." (AR, Doc. No. 7-12 at PageID 2386-87.) The undersigned finds that these opinions are not mutually exclusive. To the contrary, a person can be able to carry out short and simple instructions, but be unable to carry out detailed instructions.

The undersigned also disagrees with the ALJ's assertion that Mr. Mesarchik did not "adequately explai[n] the justification" for the difference in his opinion regarding Plaintiff's abilities to carry out short-and-simple versus detailed instructions. (Decision, Doc. No. 7-2 at PageID 75.) Mr. Mesarchik explained that the combination of Plaintiff's mental health conditions and fibromyalgia impacted her memory and ability to make decisions. (AR, Doc. No. 7-12 at PageID 2386-87.)

21

Further, the mental health treatment notes corroborate Mr. Mesarchik's opinion about Plaintiff's ongoing difficulties. In June 2021, shortly after the SSI application date, Plaintiff presented to Allwell Behavioral Health Services to restart outpatient treatment. (AR, Doc. No. 7-11 at PageID 2098.) Plaintiff presented with an anxious mood, and she complained of depression, anxiety, unstable sleep patterns, self-isolation, difficulty controlling her thoughts, almost-daily mood swings, and manic episodes. (*Id.* at PageID 2104-11.) Plaintiff began attending individual therapy sessions in July 2021 (AR, Doc. No. 7-11 at PageID 2095), and her provider began prescribing psychotropic medication in April 2022. (*Id.* at PageID 2052.)

During this time, Plaintiff reported decreased anxiety and mood symptoms— including, at times, only minor decreases in her symptoms—on a few occasions. (AR, Doc. Nos. 7-11 at PageID 2070, 2077; 7-12 at PageID 2352, 2363, 2418; 7-13 at PageID 2518.) Plaintiff's providers also occasionally documented relatively normal mental status examinations. (*See*, e.g. AR, Doc. No. 7-11 at PageID 2078, 2084.) However, on several occasions Plaintiff continued to complain of symptoms such as depression, sadness, lack of pleasure, low energy, excessive worry, high anxiety, panic attacks, mood swings, shakiness, obsessive-compulsive behaviors, irritability, and social isolation. (AR, Doc. Nos. 7-11 at PageID 2049, 2053, 2064, 2067, 2074, 2084, 2091; 7-12 at PageID 2340, 2366, 2369, 2409, 2415, 2422; 7-13 at PageID 2479, 2518.) Plaintiff's provider adjusted her medications during several visits. (AR, Doc. Nos. 7-12 at PageID 2347, 2352, 2429; 2527.) Nevertheless, mental status examinations showed abnormalities such as a flat affect, anxious behavior, a labile or depressed mood, pressured or rapid speech, racing

22

thoughts, and limited insight. (AR, Doc. Nos. 7-11 at PageID 2058-59, 2064, 2091; 7-12 at PageID 2345, 2357, 2366-67, 2427-29.)

For these reasons, the undersigned finds that Mr. Mesarchik provided adequate justification—supported by objective evidence—to support his opinions. The ALJ's reasons for discounting Mr. Mesarchick's opinions are therefore unsupported by substantial evidence.

Plaintiff also challenges the ALJ's consistency evaluation and asserts that "the ALJ turned a blind eye to the evidence in the record that was consistent with both [Mr. Mesarchik's and Nurse Ndematebem's] opinions." (SE, Doc. No. 9 at PageID 2547.) This assertion, too, is well-taken. The ALJ discounted Mr. Mesarchik's opinion because "[his] descriptions of the claimant's ongoing symptoms do not match the objective psychiatric examination findings within mental health records as these overwhelmingly contain normal findings (e.g., 13F; 16F; 22F)." But as discussed above, Plaintiff's mental health providers documented relatively normal mental status examinations on only a few occasions. (*See*, e.g. AR, Doc. No. 7-11 at PageID 2078, 2084.) On several other occasions, Plaintiff complained of depression, sadness, lack of pleasure, low energy, excessive worry, high anxiety, panic attacks, mood swings, shakiness, obsessive-compulsive behaviors, irritability, and social isolation. (AR, Doc. Nos. 7-11 at PageID 2049, 2053, 2064, 2067, 2074, 2084, 2091; 7-12 at PageID 2340, 2366, 2369, 2409, 2415, 2422; 7-13 at PageID 2479, 2518.) Despite adjustments to Plaintiff's medications, mental status examinations continued to show abnormalities such as a flat affect, anxious behavior, a labile or depressed mood, pressured or rapid speech, racing thoughts, and

23

limited insight. (AR, Doc. Nos. 7-11 at PageID 2058-59, 2064, 2091; 7-12 at PageID 2345, 2357, 2366-67, 2427-29.) These findings are ***not*** normal and ***do*** reasonably support Plaintiff's subjective complaints.

The ALJ also failed to consider the consistency of Mr. Mesarchik's opinions with Nurse Ndematebem's opinions. As discussed above, Mr. Mesarchik opined that Plaintiff would likely be absent from work more than four days per month (AR, Doc. No. 7-12 at PageID 2387), and Nurse Ndematebem opined that Plaintiff would likely need to miss work approximately three days per month. (AR, Doc. No. 7-13 at PageID 2517.) Even though Mr. Mesarchik's assessment is consistent with Nurse Ndematebem's opinion regarding absenteeism,[5] the ALJ did not consider the consistency of these opinions.

The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge numerous abnormal examination findings leads the Court to conclude that the ALJ did not resolve conflicts in the evidence. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error

---

[5] The vocational expert testified at the December 2022 hearing that the typical employer tolerance for absenteeism is "anywhere between one to two absences a month" and that "[a]nything beyond that is work preclusive." (AR, Doc. No. 7-2 at PageID 117.) Thus, both providers opined to a disabling level of absenteeism.

where the ALJ was "selective in parsing the various medical reports")). Accordingly, the ALJ's conclusion that Mr. Mesarchik's opinions were inconsistent with the totality of the evidence is itself unsupported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred because "he focused on the improper form used by the provide[r]." (SE, Doc. No. 9 at PageID 2547.) This assertion is not well-taken. Plaintiff cites to a case from another district in this circuit to support the assertion that "the ALJ should not be taking issue with the form, but rather focusing on whether the limitations documented in the form were supported." (*Id.* (citing *Hutchinson v. Comm'r of Soc. Sec.*, No. 1:13 CV 1462, 2014 U.S. Dist. LEXIS 138464, at *17 (N.D. Ohio Sept. 29, 2014)).) It is true that the *Hutchinson* court stated: "[T]he issue is not the form — check-box or narrative — but rather, as the regulations and the case law specify, whether the opinion is supported by well-established clinical and diagnostic techniques and by the other substantial evidence in the record." 2014 U.S. Dist. LEXIS 138464, at *17. But unlike the ALJ in this case, the *Hutchinson* ALJ did not address the form in his decision; instead, the Commissioner challenged the check-box form when presenting its argument on appeal. *Id.* at *17-18. The court in that case found that the Commissioner's argument constituted "entirely impermissible *post hoc* rationalization." *Id.* at *18. Thus, *Hutchinson* is inapplicable to the facts in this case.

In sum, for the reasons discussed above, the ALJ erred because his evaluation of the supportability and consistency factors of Mr. Mesarchik's opinions is not supported by substantial evidence. These errors constitute reversible error and provide another reason why the case should be remanded.

### D. The ALJ Reversibly Erred In His Analysis Of Nurse Ndematebem's Opinions

Plaintiff argues that the ALJ erred when he evaluated the consistency of Nurse Ndematebem's opinions and, further, that he failed to address the supportability factor. (SE, Doc. No. 9 at PageID 2547-48.) For the reasons discussed below, the undersigned concludes that the ALJ did not err by rejecting the functional limitations suggested by Nurse Ndematebem, but did err in his rejection of Nurse Ndematebem's opinion regarding absenteeism.[6]

The ALJ complied with applicable regulations when he concluded that the "degree of activity[-]specific limitations" opined to by Nurse Ndematebem were not persuasive. (Decision, Doc. No. 7-2 at PageID 75.) The ALJ adequately addressed the supportability of these opinions when he explained that the limitations were supported by the "benign findings during psychiatric examinations." (*Id.* (referencing the psychiatric examinations that Nurse Ndematebem performed).) Further, he adequately addressed the consistency factor when he found that greater functional limitations were warranted in "consideration of [Plaintiff's] performance during the consultative examinations." (*Id.* (citing AR, Doc. Nos. 7-8 at PageID 945-49; 7-9 at PageID 1466-71).)

However, the ALJ erred when he disregarded Nurse Ndematebem's opinion that Plaintiff would be absent from work for approximately three days each month due to her impairments or treatment. The ALJ explained: "However, Mr. Ndematebem then opined

---

[6] Plaintiff also alleges that the ALJ erred because "he focused on the improper form used by the provide[r]." (SE, Doc. No. 9 at PageID 2547.) For the same reasons set forth above in the discussion of Mr. Mesarchik's opinion, this assertion is not well-taken.

[Plaintiff] would be absent from work about three days per month without providing any justification. This degree of absenteeism appears inconsistent with the limitations described within the form, as [Plaintiff] can constantly perform all activities articulated within the form." (Decision, Doc. No. 7-2 at PageID 75.)

At most, this discussion addresses the supportability factor required by 20 C.F.R. § 416.920c(c)(1). But it does not address the consistency factor required by 20 C.F.R. § 416.920c(c)(2). Supportability requires consideration of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency requires consideration of "the evidence from *other* medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2) (emphasis added).

Here, the ALJ only considered Nurse Ndematebem's failure to provide any supporting explanations for the opinion, as well as the fact that Nurse Ndematebem's opinion about the degree of absenteeism conflicted with Nurse Ndematebem's other opinions on the form. (Decision, Doc. No. 7-2 at PageID 75.) Therefore the ALJ only addressed the supportability factor. The ALJ did not explain his consideration of other evidence when discounting Nurse Ndematebem's opinion about Plaintiff's absenteeism, such as Mr. Mesarchik's opinion that Plaintiff would likely be absent from work more than four days per month. (AR, Doc. No. 7-12 at PageID 2387.) Because the ALJ did not address the consistency of this opinion, the undersigned concludes that the ALJ did not comply with Section 416.920c(b)(2).

Defendant argues that the ALJ addressed consistency because he found that "Plaintiff's performance during her consultative examinations supported greater limitations than opined by Mr. Ndematebem . . . ." (Mem. In. Opp., Doc. No. 11 at PageID 2563.) But this statement only addressed Nurse Ndematebem's opinions about Plaintiff's functional limitations, not his opinion about absenteeism. (*Compare* AR, Doc. No. 7-13 at PageID 2516-17, *with* Decision, Doc. No. 7-2 at PageID 68.) The ALJ did not compare Nurse Ndematebem's opinion about absenteeism to evidence from other medical sources and nonmedical sources. He therefore did not consider the consistency factor for this part of Nurse Ndematebem's opinion.

This failure is significant because Nurse Ndematebem's opinion regarding absenteeism is more restrictive than the ALJ's RFC. The ALJ's failure to comply with a legal requirement constitutes reversible error, as the error was not harmless and instead prejudiced Plaintiff on the merits. *See Rabbers*, 582 F.3d at 654. This error provides another reason why the case should be remanded.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming

28

or where the evidence of disability is strong while contrary evidence is lacking. *Faucher*

*v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

Here, a judicial award of benefits is unwarranted because the evidence of

disability is neither overwhelming nor strong while contrary evidence is lacking.

*Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to

the Social Security Administration pursuant to Sentence Four of Section 405(g) for the

reasons stated above. On remand, the ALJ should further develop the record as necessary,

particularly as to the medical opinion evidence, and evaluate the evidence of record under

the applicable legal criteria mandated by the Commissioner's regulations and rulings and

governing case law. The ALJ should evaluate Plaintiff's disability claim under the

required five-step sequential analysis to determine anew whether Plaintiff was under a

disability and whether his application for SSI should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 9) be GRANTED;

2.    The Court REVERSE the Commissioner's non-disability determination;

3.    No finding be made as to whether Plaintiff was under a "disability" within
      the meaning of the Social Security Act;

4.    This matter be REMANDED to the Social Security Administration under
      Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent
      with this Decision and Order; and

5.    This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).